UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOHNATHAN H.[1], | ) |
|     Plaintiff, | ) ) ) |
| v. | ) CIVIL NO. 2:20cv384 |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. § 423(a), § 1382c(a)(3). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.

2

2. The claimant has not engaged in substantial gainful activity since November 21, 2015, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: diabetes mellitus, hypertension, lumbar spondylosis, and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant has the residual functional capacity to perform work except lifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, standing for 6 hours, walking for 6 hours; and push and or pull as much as he can lift and or carry. The claimant can climb ramps and stairs occasionally. He can never climb ladders, ropes, or scaffolds. He can balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally.

6. The claimant is capable of performing past relevant work as a Chief Guard as generally performed. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 21, 2015, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 41- 47).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on November 19, 2021. On December 23, 2021, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on January 18, 2022. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

On August 31, 2015, Plaintiff was assessed with a hypertensive urgency. (Tr. 608). On November 21, 2015, Plaintiff injured his back in a work related accident after a slip and fall. (Tr. 329). On December 30, 2015, Plaintiff had an MRI of his lumbar spine, which showed bulging discs with foraminal stenosis. (*Id.*).

On February 1, 2016, Plaintiff presented to Mihas Mamu Kodenchery, M.D. due to hypertension. (Tr. 592). On February 24, 2016, Plaintiff presented to Satish Dasari, M.D. of Midwest Interventional Spine Specialist due to lower back pain, which radiated into his buttocks and right knee. Plaintiff had a positive straight leg raise on the right, but full range of motion in his lower extremities. (Tr. 347). Plaintiff also complained of numbness and tingling. (*Id.*).

4

Dr. Dasari assessed Plaintiff with lumbar radiculitis, lumbar disc herniation with radiculopathy, and lumbar foraminal stenosis. (Tr. 348). On March 7, 2016, Plaintiff returned to Dr. Dasari and had a steroid injection due to continued back pain. (*Id*.). On March 17, 2016, Plaintiff's straight leg raise exam was negative bilaterally. (*Id*.). On July 21, 2016, Plaintiff stated that his pain was a 7 out of 10 in severity. (Tr. 332). On August 18, 2016, Plaintiff returned to Dr. Dasari of Midwest Interventional Spine Specialist due to lower back pain on the right. Plaintiff also complained of radiating pain from his buttocks to his right knee. He described a stabbing pain with numbness and tingling. (Tr. 329).

On October 9, 2017, Plaintiff had a State agency physical examination with O. Villarroel, M.D. (Tr. 462). Dr. Villarroel stated that Plaintiff had an antalgic gait without an assistive device. He was able to stoop and squat with difficulty. He was able to walk heel to toe and tandemly with difficulty. He was able to get on and off the examination table without difficulty and did not require any assistance. He was able to stand from a sitting position with difficulty. (Tr. 464). Plaintiff stated that he had severe pain in his lower back that radiates down his right leg causing him not to be able to walk, sit, or stand long periods of time. Plaintiff stated that he tested his blood sugar the morning of the exam and it was 170. He stated that he takes oral medication for his diabetes. Plaintiff also complained of numbness in his lower extremities and had positive straight leg raises. (Tr. 462-463). The Dr. Villarroel assessed Plaintiff with a bulging disc in the lumbar spine and type II diabetes. (Tr. 464).

In support of remand, Plaintiff first argues that the ALJ erred in evaluating his subjective symptoms. In determining a claimant's subjective symptoms an ALJ must consider several factors, including the claimant's daily activities, level of pain, aggravating factors, medication,

5

treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see* § 404.1529(c); SSR 16-3p. If the ALJ believed that the medical evidence did not support Plaintiff's testimony about the effects of his impairment, the ALJ should have detailed which evidence was in fact not consistent with the record. (Tr. 46).

Here, Plaintiff argues that he ALJ did not explain which statements by Plaintiff were inconsistent. *See Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir.2011). Plaintiff points out that the ALJ did not point to a single inconsistent statement. Rather, the ALJ opined that Plaintiff's ability to complete a four-week physical rehabilitation program was enough to demonstrate that his testimony had been inconsistent.[2] (Tr. 46). Yet the ALJ does not explain what course of treatment would have been more consistent with Plaintiff's symptoms.

Plaintiff also argues that the ALJ fails to discuss how he concluded that Plaintiff's daily activities contradict his alleged symptoms. The ALJ fails to note how any of Plaintiff's daily activities allege greater functionality; or which of his daily activities were not as limited as one would expect given his complaints of disabling symptoms and limitations; or which of his own reports contradict his statements; or which other portions of the record contradicted his statements.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not completely consistent with the medical evidence and other evidence." (Tr. 46). This is, however, precisely the boilerplate language that the Seventh Circuit routinely criticizes as legally insufficient. *See id.*; *McClesky v. Astrue*, 606 F.3d 351, 352

---

[2] Undoubtedly, if Plaintiff had <u>not</u> completed the physical rehabilitation program, the ALJ would have held this against him as evidence of failure to complete treatment.

(7th Cir.2010). Here, the ALJ solely recited the boilerplate language in discounting Plaintiff's symptom testimony. The ALJ did not provide reasons for his conclusion about Plaintiff's symptoms, including any inconsistent statements to medical providers, clinical examination findings such as a pattern of exaggeration; or the treatment that Plaintiff underwent for his conditions. Moreover, "[s]ymptoms cannot always be measured objectively through clinical or laboratory techniques," SSR 16–3P, 2016 WL 1119029, at *4 (Mar. 16, 2016), and an ALJ cannot disregard subjective complaints just because a determinable basis for symptoms of that intensity do not stand out in the medical record. *See Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Also, an ALJ must discuss and consider Plaintiff's subjective statements regarding medication side effects. *Miles v. Berryhill*, 2018 WL 3608557, at *3 (N.D. Ill. 2018). As Plaintiff notes, the ALJ never mentioned Plaintiff's medications even though Plaintiff testified that his medications made him use the bathroom constantly, gave him dry mouth, caused him fatigue, decreased memory, and grogginess. (Tr. 716, 289).

Thus, while the ALJ's decision need not mention every piece of evidence for his finding to be supported by substantial evidence, he "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Here, the ALJ recited only facts that supported his conclusion that Plaintiff's physical limitations were not severe. The ALJ failed to consider the evidence in the record suggesting that Plaintiff's limitations were more severe. For example, the ALJ never mentions Plaintiff's bilateral positive straight leg raises or chronic shortness of breath at his consult exam nor how this evidence is consistent with earlier straight leg raises that the ALJ did mention. (Tr. 44, 463).

7

The ALJ relies on physical therapy notes to opine that Plaintiff could comfortably lift weight at the medium exertional level, yet the notes relied on by the ALJ state that Plaintiff "placed his right hand on his lower back after 21.4 lbs." and "demonstrated flexion and pronation with [d]ecreased control of and knees, wide stance at 6.0 pounds." (Tr. 395). Plaintiff also repeatedly complained of back pain while sitting at his consultative examination. (Tr. 396). Under Social Security regulations, "medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). The ALJ also faults Plaintiff for not seeking much medical treatment following the first quarter of 2018. However, the record reveals that Plaintiff had previously been denied further treatment due to insurance issues. (Tr. 331).

As the ALJ failed to properly evaluate Plaiintiff's subjective symptoms, as discussed above, remand is warranted on this issue.

Next, Plaintiff argues that the ALJ failed to properly consider his well-documented obesity and its effect on his RFC. (Tr. 353-354.) Although "obesity is no longer a standalone disabling impairment, the ALJ must still consider its impact when evaluating the severity of other impairments." *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018) (citation omitted). This is because the "combined effects of obesity with other impairments may be greater than might be expected without obesity." Social Security Ruling ("SSR") 02-1P, 2002 WL 34686281, at *6 (Sept. 12, 2002); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40."). Here, there was no review of Plaintiff's weight or BMI at any step in the process.

An ALJ must "consider the exacerbating effects of a claimant's obesity on [his]

8

underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC." *Hernandez v. Astrue*, 277 F.App'x 617, 623–24 (7th Cir. 2008). Even when a claimant does not explicitly list obesity as an impairment in their application for disability, the ALJ still must evaluate how obesity impacts the claimant's overall condition if the ALJ was put on notice that obesity could be a relevant factor. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).

Plaintiff asserts that he suffers from severe impairments that may be impacted by obesity. He suffers from lumbar spondylosis, diabetes, and observable numbness and edema in both his feet and knees. The Seventh Circuit has noted that it is error to fail to consider the impact of obesity on joint pain. *Martinez v. Astrue*, 630 F.3d 693, 698–99 (7th Cir. 2011); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004); *see also* SSR 02-1p, 2002 SSR LEXIS 1, 2002 WL 34686281, at *6 (Sept. 12, 2002). Further, Plaintiff points out that he suffers from depression, which may also be affected by obesity. (Tr. 654). "Obesity may also cause or contribute to mental impairments such as depression." SSR 19-2p. Clearly, the medical record includes multiple references that could have reasonably alerted the ALJ that obesity was a relevant impairment. As such, the ALJ was required to consider the effects of Plaintiff's obesity on his overall condition. (Tr. 651). Thus remand is warranted on this issue.

Next, Plaintiff argues that there are clear errors at Step 4 of the sequential analysis. Plaintiff contends that the ALJ erred in determining that Plaintiff could do his past work because the ALJ failed to treat his past work as a composite job. Plaintiff testified that he had gone through the police academy program and was a sworn police officer. One of his former jobs was as an airfield security sergeant at the Army Aviation Support Facility which was housed at the

Gary Airport. (Tr. 706). In this job, Plaintiff was responsible for the safety of military planes and weapons. His duties included patrolling the military installation, investigating burglaries, and apprehending suspects. (Tr. 707).The vocational expert classified this work as "Chief Guard", which is a skilled job, light as generally performed and heavy as actually performed, with an SVP of 6. (Tr. 733). The VE testified that Plaintiff could perform his past work "as generally performed". Plaintiff asserts that the Dictionary of Occupational Titles (DOT) description of "Chief Guard" does not adequately describe his job at the Gary Airport because he also patrolled the facility and secured aircraft and ammunitions. Plaintiff points out that a person who patrols such grounds is classified in the DOT as "Protective Officer, Security" (DOT 372.363-010). The "Protective Officer" job is medium exertion, while the "Chief Guard" job is light exertion.

In determining whether a claimant can perform the functional demands and job duties of his past job, the "Dictionary of Occupational Titles (DOT) descriptions can be relied upon -- for jobs that are listed in the DOT -- to define the job as it is usually performed in the national economy." SSR 82-61, 1982 WL 31387, at *1. However, "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." *Id*. The agency's Program Operations Manual System (POMS) states the following about composite jobs: "The claimant's PRW [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant....When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.... A composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as

generally performed in the national economy'." POMS DI 25005.020.

Plaintiff argues that the record clearly demonstrates that Plaintiff's past work was a composite job because his testimony indicated that patrolling the military airport in vehicles and securing and maintaining aircraft and ammunitions was a main duty of his job. (Tr. 706). Plaintiff testified that he had to patrol the military airport in vehicles, and was responsible for the care and safety of planes and ammunition that belonged to the military. (Tr. 706). The record also notes that Plaintiff patrolled the campus on foot and car and responded to theft and disturbance calls where he could have to lift up to 200 pounds. (Tr. 229). Thus Plaintiff contends that his job as a "Chief Guard" also encompassed the duties of a "Protective Officer", DOT 372.363-010. Plaintiff further testified that he would go out and do these operations with a new group of patrolmen every 90 working days as their training period dictated. (Tr. 731). Thus, Plaintiff contends that his testimony clearly established that his past work was a composite job.

While Plaintiff did not object at the hearing to the description of his past relevant work, Plaintiff's counsel informed the VE and ALJ that she considered Plaintiff's past work at the airport to include actual patrolling. (Tr. 733). While an ALJ may rely on even "purely conclusional" VE testimony that goes unchallenged, *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir.), the VE's testimony in this case was contradicted by both Plaintiff's testimony and the VE's testimony itself. The VE stated that the job he was referring to was one that encouraged no interaction with suspects, which was why the job did not rise above the light level. (Tr. 736). He also testified that the job, if it involved actual patrolling, could rise above the light level, meaning that Plaintiff, with his RFC limitations, could not perform this job. (*Id.*). As the ALJ failed to properly evaluate Plaintiff's past work, remand is required on this issue as well.

11

Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: January 26, 2022.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court